# In the United States Court of Federal Claims

No. 13-908C
(Filed: December 21, 2016)

* * * * * * * * * * * * * * * * * * * * * * * * *

SALINE ASSOCIATES NO.1
LIMITED PARTNERSHIP, et al.,

           *Plaintiffs*,

v.

THE UNITED STATES,

           *Defendant*.

Section 515; Breach of contract; Taking; Statute of limitations; Claim accrual.

* * * * * * * * * * * * * * * * * * * * * * * * *

    *Jeff H. Eckland*, *Mark J. Blando*, *Vince C. Reuter*, and *Lara R. Sandberg,* Minneapolis, MN, for plaintiffs.

    *Matthew Roche*, United States Department of Justice, Civil Division, Commercial Litigation Branch, Washington, DC, with whom were *Benjamin C. Mizer*, Principal Deputy Assistant Attorney General, *Robert E. Kirschman, Jr.*, Director, and *Franklin E. White, Jr.*, Assistant Director, for defendant.

---

OPINION

---

BRUGGINK, *Judge*.

    This is an action for breach of contract, or, in the alternative, for a Fifth Amendment taking arising from the government's repudiation of loan

agreements made under sections 515 and 521 of the Housing Act of 1949. Pending before the court is defendant's motion for summary judgment pursuant to Rule 56 of the Rules of the United States Court of Federal Claims, filed on April 13, 2016. The motion is fully briefed, and oral argument was held on November 10, 2016. Because plaintiffs transferred their rights under the agreements before filing suit or tendering prepayment, we grant defendant's motion for summary judgment.

BACKGROUND

Pursuant to section 515, the Farmers Home Administration ("FmHA") of the United States Department of Agriculture ("USDA") issued plaintiffs low-interest mortgage loans in exchange for, *inter alia*, plaintiffs' providing rural housing for low-income tenants during the life of the loan. Under the loan agreements, plaintiffs, Saline Associates #1 Limited Partnership ("Saline"), St. Clair West Associates Limited Partnership ("St. Clair West"), and Stockbridge Associates Limited Partnership ("Stockbridge"), were required to use their property in accordance with the section 515 program for 20 years but were then free to prepay their mortgages, thereby releasing their property from the restrictive covenants. After plaintiffs entered these agreements, but before the 20-year period was complete, Congress enacted the Housing and Community Development Act of 1992 ("HCDA"), which together with the Emergency Low Income Housing Preservation Act of 1987 ("ELIHPA") repudiated plaintiffs' agreements by providing that the government would no longer automatically accept prepayment of the loans. *Franconia Assocs. v. United States*, 536 U.S. 129, 142 (2002).

**Saline Associates**

On July 24, 1985, Saline and FmHA entered into a loan agreement pursuant to section 515 of the Housing Act of 1949 for the construction of a low-income rental housing complex known as Maple Heights Apartments. The agreement provided that during the life of the mortgage Saline would abide by certain restrictions regarding its use of the property, including, among other things, renting to low-income tenants, in exchange for FmHA's providing a low-interest loan. On March 24, 1987, FmHA issued a 50-year term promissory note and mortgage to Saline for $1,439,250. The mortgage required that the property be used for low-income housing for a period of 20 years concluding on March 24, 2007. After the 20-year restrictive use period, Saline would then enjoy the right to prepay the balance of the loan and get out

of the program.

Prior to the conclusion of the 20-year restrictive use covenant, the government repudiated Saline's prepayment right by imposing restrictions through the enactment of ELIHPA and HCDA. *Franconia*, 536 U.S. at 133. Specifically, the legislation directs the Rural Housing Service ("RHS"), the successor agency to FmHA, to encourage a borrower's continued participation in the program by offering it certain incentives, such as a lower interest rate or an additional loan. 42 U.S.C. § 1472(c)(4)(B) (2012). If the borrower rejects these incentives, the borrower is then required to attempt to sell the property to a nonprofit organization or public agency at fair market value. *Id*. § 1472(c)(5)(A)(I). RHS can accept prepayment only if the property is not sold within 180 days. *Id*. § 1472(c)(5)(A)(ii).

On October 12, 2007, roughly seven months after the expiration of the 20-year restrictive use covenant, Saline entered into a contract to sell the Maple Heights Apartment complex to Union Street Enterprises, LLC ("Union Street"). Union Street agreed to purchase the property and assume Saline's section 515 loan for a total sales price of $1,293,236. On November 14, 2007, RHS approved the property transfer and the loan assumption from Saline to Union Street, and the sale of the property closed on November 19, 2007. On March 13, 2008, after Union Street's assumption of $1,175,000 of debt, RHS approved a debt cancellation for the $229,399.40 balance remaining on Saline's loan.

**St. Clair West Associates**

On March 1, 1985, St. Clair West entered into a similar loan agreement with FmHA for the construction of a low-income rental housing complex known as Clairwood Apartments. On September 3, 1986, FmHA issued St. Clair West a promissory note and mortgage with a 50-year term for $1,366,100 to build the apartments. Like Saline, St. Clair West was subject to the requirements of section 515 in its operation of the apartment complex for the duration of its loan. Its agreements also included a prepayment right upon the conclusion of a 20-year restrictive use covenant. The government repudiated the prepayment right by enacting ELIHPA and HCDA.

On October 12, 2007, after the expiration of the 20-year restrictive use covenant, St. Clair West contracted with Union Street to sell the Clairwood Apartments. Union Street agreed to purchase the property and assume St.

Clair West's section 515 loan for a total sales price of $957,702. On November 14, 2007, RHS approved the transaction, and the sale closed on November 19, 2007. On July 30, 2008, after Union Street's assumption of $876,000 of debt, RHS approved a debt cancellation for the $620,283.46 balance remaining on St. Clair West's loan.

**Stockbridge Associates**

On June 27, 1985, Stockbridge entered into a similar agreement with FmHA for the construction of a low-income rental housing complex known as Lakeview Apartments. On October 17, 1986, FmHA issued Stockbridge a promissory note and mortgage with a 50-year term for $922,490 to build the apartments. Like Saline and St. Clair west, Stockbridge was subject to the requirements of section 515 in its operation of the apartment complex for the duration of the loan. Its agreement likewise included a right to prepay upon the conclusion of a 20-year restrictive use covenant, and the government repudiated the prepayment right by enacting ELIHPA and HCDA.

On October 12, 2007, after the expiration of the 20-year restrictive use covenant, Stockbridge contracted with Union Street to sell the Lakeview Apartment complex. Union Street agreed to purchase the property and assume Stockbridge's section 515 loan for a total sales price of $619,123. On November 14, 2007, RHS approved the transaction, and the sale closed on November 19, 2007. On March 3, 2008, after Union Street's assumption of $548,000 of debt, RHS approved a debt cancellation for the $358,797.62 balance remaining on Stockbridge's loan.

None of the plaintiffs filed suit or made a prepayment request prior to their respective transfer and assumption transactions. Just over six years after contracting to sell their section 515 properties, plaintiffs commenced this action by filing a complaint on November 15, 2013.

DISCUSSION

Defendant believes that it is entitled to summary judgment on plaintiffs' breach of contract claim because the government's duty to accept prepayment did not become due before plaintiffs transferred their rights under the contract. Defendant argues that, under the Supreme Court's decision in *Franconia*, the government would breach its duty to accept prepayment only if it either refused to accept an attempt by plaintiffs to prepay their loans or if plaintiffs

treated the government's repudiation as a present breach by filing suit. Given that plaintiffs did not take either of these steps, defendant concludes that this court should grant its motion for summary judgment.

Plaintiffs oppose the defendant's motion by arguing that the government's repudiation ripened into a breach when plaintiffs sold their properties and transferred their obligations under the loans to Union Street. Specifically, plaintiffs believe that *Franconia* should not be read to limit a section 515 borrower to just two options with which to respond to the government's repudiation. Rather, plaintiffs argue that they had a third option, which was triggered upon the consummation of the assignments of their mortgages to Union Street. This sale and assignment, according to plaintiffs, constituted a form of protective mitigation as well as a material change of position, allowing plaintiffs at that point to sue for breach.

Defendant counters that, even if such a third option exists, plaintiffs gave up their right to enforce the contract by transferring the loan agreements to Union Street. Defendant notes that, because performance of the original loan agreements continues, the government still has the ability to retract its repudiation and allow prepayment. Thus, according to defendant, plaintiffs did not materially change their position, they simply assigned their rights to another party, and the transfer of the loan agreement ensures continued performance under the contract by Union Street.

We believe that the language in *Franconia*, cited by defendant, controls the outcome. The Supreme Court stated that unless a borrower treats "ELIHPA as a present breach by filing suit prior to the date indicated for performance, breach would occur when a borrower attempted to prepay, for only at that time would the Government's responsive performance become due." *Franconia*, 536 U.S. at 143. Following the *Franconia* decision, plaintiffs were thus limited to two options: they could file suit immediately or attempt to exercise their prepayment right and file suit when the Government refused to accept prepayment. Because plaintiffs transferred their respective properties and loan agreements prior to taking either of those steps, they failed to place the government in breach when they had the right to do so.

Even if we were to find that plaintiffs' desired third option is still available in the section 515 context after *Franconia*, plaintiffs would not satisfy their own standard. We find that plaintiffs' actions did not establish a material change of position that could serve as an election to treat the

5

government's repudiation as a breach. When Union Street assumed the loan agreements, plaintiffs transferred all rights they had under the contracts to Union Street. Unlike the cases cited by plaintiffs in their brief, plaintiffs' transfers were consistent with continued performance by the government and Union Street.

Plaintiffs' material change of position claim would, in any event, fall victim to the statute of limitations. Every claim over which the United States Court of Federal Claims has jurisdiction "shall be barred unless the petition thereon is filed within six years after such claim first accrues." 28 U.S.C. § 2501 (2012). As a general rule, "a claim accrues when all events necessary to the Government's liability have occurred." *L.S.S. Leasing Corp. v. United States*, 695 F.2d 1359, 1365 (Fed. Cir. 1982). If plaintiffs' sale of their properties constituted a material change of position that placed defendant in breach, then plaintiffs' claim accrued when they made that material change and were able to sue for damages.

Just over six years before filing their complaint on November 15, 2013, plaintiffs contracted to sell their properties on October 12, 2007, and RHS approved the sale on November 14, 2007—one day outside the six-year statute of limitations. Just under six years before filing, plaintiffs closed on the transaction on November 19, 2007. If plaintiffs' claims accrued on the date they contracted to sell the properties or received approval from RHS, then their claims would be barred by the statute of limitations. If, on the other hand, plaintiffs' claims accrued on the closing date, the statute of limitations would not bar their claims.

Defendant argues that plaintiffs' claims accrued on the contract date and supports its position by noting that the legally binding contracts committed plaintiffs to their election and quantified their damages. During oral argument, plaintiffs argued that their claim accrued on the closing date because up until they closed on the transaction their position vis-à-vis the government had not yet changed. While it is true that plaintiffs continued to perform under the contract up until the closing date, we hold that plaintiffs' claims accrued on the date they contracted to sell the properties and transfer the loan agreements. When plaintiffs contracted to sell their properties, Union Street could enforce the sales contracts through an action for specific performance or seek money damages if faced with a breach by plaintiffs. Accordingly, plaintiffs' claims based on a material change of position, if allowed, would be barred by this court's six-year statute of limitations.

Having decided that plaintiffs are unable to recover on non-constitutional grounds, we turn now to plaintiffs' contention that the government's repudiation resulted in a Fifth Amendment taking. Plaintiffs assert two theories: a taking of their contractual prepayment rights and a separate claim based on restrictions placed on the use of their land—in effect, a regulatory taking claim. Plaintiffs properly pleaded their takings claims as alternative theories for recovery. *See Stockton East Water Dist. v. United States*, 583 F.3d 1344, 1368 (Fed. Cir. 2009); *see also Henry Housing Ltd. Partnership v. United States*, 95 Fed. Cl. 250, 255 (2010) ("[HCDA] and ELIHPA . . . can give rise to government liability in the form either of breach of contract or of a taking."). These claims, however, run into at least two problems which bar plaintiffs from recovering.

With respect to the alleged taking of their contractual prepayment right, plaintiffs' contract rights cannot be greater in a takings analysis than in a contract analysis. If they do not have a contract right, there is no property to be taken. Vice versa, if they have a contract right, their remedy is to assert that right. They continued to have a contract remedy after the legislation was adopted, up until the time they sold all of their contractual rights. The fact that they elected not to place the government in breach prior to sale does not generate a hitherto non-existent taking. Accordingly, plaintiffs' claims regarding the alleged taking of their prepayment rights must fail.

Second, to the extent that plaintiffs argue that they suffered a regulatory taking which impacted the value of their real estate, the claims are untimely. To be successful, plaintiffs must show that the government took a private property interest for public use without paying them just compensation. *Alliance of Descendants of Texas Land Grants v. United States*, 27 F.3d 1478, 1481 (Fed. Cir. 1994). As a result, "a claim under the Fifth Amendment accrues when that taking action occurs." *Id*. The economic impact of the restrictions placed on plaintiffs' property through the enactment of ELIHPA and HCDA began at the date of passage of the legislation, well outside the limitations period. Even if the impact is seen as not occurring until the conclusion of the 20-year restrictive use covenant, that also was more than six years before plaintiffs filed suit.[1]

---

1. We recognize that, in *Franconia,* the Supreme Court suggested that a claim based on a taking of contract prepayment rights would not mature until either a demand for prepayment or the filing of a suit, *Franconia*, 536 U.S. at 149, for the same reasons we hold that plaintiffs' contract claims are tardy, a similar taking claim would also be late.

CONCLUSION

   For the reasons stated above, we grant defendant's motion for summary judgment. The Clerk is directed to enter judgment accordingly. No costs.

            <u>s/ Eric G. Bruggink</u>
            ERIC G. BRUGGINK
            Senior Judge